## Bauer's Appeal.

The registration of a physician having a diploma issued by a college of another state is not authorized, under the act of June 8, 1881, by a detached certificate of the secretary of a Pennsylvania medical college that he had "examined the diploma, and believed it to be genuine and legally issued to the doctor whose name it bears."

(Decided March 18, 1886.)

Error to the Common Pleas of Columbia County to review

NOTE.—By the act of May 18th, 1893 (P. L. 94), a state medical council was established. The holders of diplomas of other states must now ap-

the judgment of the court in striking the registration of Joseph
L. Bauer, M. D., from the Medical Registry. Affirmed.

On the hearing of the rule, the depositions of Dr. Tyson,
secretary of the medical faculty of the University of Pennsyl-
vania were presented. Dr. Tyson testified that neither Dr.
Bauer nor his diploma was examined by the medical faculty,
but that the certificate was made by authority of the following
resolution of the medical faculty:

"November 17, 1881. Dr. Leidy, for the committee ap-
pointed at the last meeting to consider the matter of article 4
of the new registration law of Pennsylvania, reported verbally
that it had been agreed temporarily to pursue the course adopted
by the Jefferson Medical College in determining the qualifica-
tions of the graduates of medical colleges out of the state who
desired hereafter to begin to practise in Pennsylvania. This
course consisted in subjecting the candidate to an examination
by the different professors, and, if such examination is satisfac-
tory, the dean to indorse the diploma. For this service of
examination the faculty is to charge a fee of $20, to be paid
into the treasury of the university to the credit of the medical
department, but to be returned to the candidate if the examina-
tion is not satisfactory.

"After much discussion Dr. H. C. Wood moved that the
secretary be directed to reply to all inquiries that the medical
faculty of the university, believing § 4 of the medical act to
be of doubtful interpretation and constitutionality, has decided
not to examine graduates of schools outside the state, but simply
give a note through the secretary to the prothonotary, expressing
their opinion as to the genuineness of the diploma presented.
The motion was carried."

The further facts appear by the opinion of the court below,
ELWELL, P. J.:

This rule was granted upon the petition of the prothonotary

ply to it for a license. Physicians registered under act of June, 1831, in
any county of the state prior to March 21st, 1894, are entitled to practise
in other counties without further registration. Fishblate v. McCullough,
9 Pa. Super. Ct. 147; Com. v. Townley, 22 Pa. Co. Ct. 11. 7 Pa. Dist. R.
413. These acts do not repeal the act of March 24th, 1877 (P. L. 48), as
amended by act of July 13, 1897 (P. L. 357), relating to the licensing of
physicians who open an office for business. Moore v. Bradford County, 148
Pa. 342, 23 Atl. 896; Com. v. Lorman, 21 Pa. Co. Ct. 481.

alleging that the registration was erroneously made without the production of the evidence required by law to entitle the respondent to be registered as a physician and surgeon. Whether the prothonotary had authority to register the respondent is the question which we have to decide.

It appears by the statement of the respondent entered upon the record that he claimed to be a graduate of the Medical College of Missouri, and to have a diploma issued to him by that institution, dated the 11th of March, 1874, conferring upon him the degree of Doctor of Medicine, a copy of which he filed with the prothonotary at the time of his application to be registered. This copy has no indorsement upon it. Nor does it appear upon the record, nor upon any paper filed in the case, that either the original diploma or the copy was ever exhibited to the faculty of any medical college of this commonwealth. In his answer to this rule, the respondent alleges that he did exhibit his diploma to the medical faculty of the University of Pennslyvania, and that they were satisfied with his qualification to practise; and that the secretary of that faculty gave to him a certificate which he produced to the prothonotary at the time of his application for registration.

This certificate forms no part of the record. It was not filed with the prothonotary, but is produced on the hearing of this rule, and is claimed to be equivalent to the indorsement of the diploma required by the act of June 8, 1881, entitled "An Act to Provide for the Registration of all Practitioners of Medicine and Surgery."

The certificate signed by the secretary is in the words following:

University of Pennsylvania,
Medical Department,
Philadelphia, July 11, 1883.

To the Prothonotary of          County.

This is to certify that I have examined the diploma of Dr. Joseph L. Bauer, purporting to have been issued by the Missouri Medical College to Dr. Joseph L. Bauer; believe it to be genuine and legally issued to Dr. Bauer, whose name it bears.

By the 4th section of the act before mentioned (Pamph. Laws 1881, p. 72), it is enacted that "any person who may

desire to commence the practice of medicine or surgery in this state after the passage of this act, having a medical diploma issued or purporting to have been issued by any college, university, society, or association in another state or foreign country, shall lay the same before the faculty of one of the medical colleges or universities of this commonwealth for inspection, and the faculty being satisfied as to the qualifications of the applicant and the genuineness of the diploma, shall direct the dean to indorse the same; after which, such persons shall be allowed to register as required by § 2 of this act."

These are plain words, clearly conveying the meaning that the applicant shall not be allowed to register until he shall have obtained the specified indorsement. Under the act of 1875, in any controversy in respect to the right of a physician or surgeon to practise, resort was necessarily had to parol evidence to show the qualifications of the practitioner. This was found to be insufficient to protect the public, as well as inconvenient and vexatious to the qualified physician or surgeon. The act of 1881 was intended to remedy the defects of the former law, and to relieve the public and the doctors from the mischief arising under it, by requiring that all physicians and surgeons should register in a public office, and that the record of the registry should upon its face contain all the law requires to entitle a person to practise medicine.

In respect to persons coming from other states or countries, claiming to be qualified to practise and having a diploma from some medical college outside of the state, the statute makes special provision.

It constitutes the faculties of the several medical colleges and universities of the state tribunals, with authority to examine, not only the diplomas presented to them, but also the person to whom granted, to ascertain whether the former are genuine, and the holder thereof is qualified to practise.

The judgment of these medical tribunals, when rendered, is conclusive, and is the only evidence upon which a prothonotary is authorized to register any applicant.

The duty of that officer in the business of registration is merely clerical. His authority in this regard is derived from, or rather is conferred by, the statute. He can dispense with nothing which the law requires. When an applicant presents himself with a diploma from another state, but without the indorse-

ments required by the act, he has no authority to inquire into the validity of the reasons of any medical institution for refusing to indorse the diploma. It is enough for him to justify a refusal to register if no indorsement appears.

The 2d section of the act, which provides particularly as to what the register shall contain, provides that the copy of a diploma shall be filed, and that it shall include the indorsements on the diploma. The 4th section allows registration in a proper case as required by the 2d section. [It follows that the indorsements must appear on the diploma; according to the usual meaning of the term, the writing constituting the indorsement should appear on the back of the instrument.]

It appears that the institution to which Dr. Bauer applied for examination of his diploma refuses to indorse any diploma, and by resolution has expressed a doubt as to the construction and constitutionality of the act of June 8, 1881. It is not my purpose to criticise the action of that learned and able body. We are considering only the action of our own officer, and conclude that [if the act of assembly is unconstitutional, it confers no authority upon him to register an applicant having a foreign diploma. And if the law is not unconstitutional, he has no authority to register one who does not bring himself within its provisions].

If any medical institution has doubts in respect to the validity of the statute, it should refuse to act under it; to comply with its requirements in part, omitting that which is most essential, is misleading and ought not to be done.

It is not to be doubted that the secretary of a medical faculty may be authorized to act as dean; but when he acts in that capacity in carrying out the provisions of the 4th section above quoted, it ought to appear that the indorsement upon a diploma is the act of the faculty, or is done by their direction. They cannot delegate their authority to one of their number.

The state, in the enactment of its laws, may exercise its judgment concerning what acts tend to corrupt the public morals, impoverish the community, disturb the public repose, affect the public health, or impair the comfort or health of individual members, over whom its protecting watch or care is required.

When, therefore, the legislature with this exclusive authority has exercised its right of judging concerning these matters, all

other departments of the government are bound by the decision, and no court has a right to review it. It is by virtue of this police power that every state has the right to pass laws in restraint of crime and for the preservation of the public peace, health, and morals of the citizens. A government that did not possess the power to protect itself against evils like these would scarcely be worth preserving. Bishop, Statutory Crimes, § 999; Jones v. People, 14 Ill. 196; Austin v. State, 10 Mo. 591; License Cases, 5 How. 504, 12 L. ed. 257; Cooley, Const. Lim. 742.

It is urged upon our consideration that the respondent having a regular diploma from a respectable institution of another state, and being well qualified to practise, has done all that he could do to comply with the law; and it is contended that, therefore, he was entitled to be registered.

The answer to this contention is that the law has not been complied with. If it was the duty of the University of Pennsylvania to examine the applicant and his diploma, and make or cause to be made indorsements as specified in the act of assembly, and the faculty refused to perform that duty, the remedy was by mandamus to proceed and discharge the duty impliedly expressed by law. If they are under no obligation to do so, and refuse for that reason to make indorsements, neither the prothonotary nor any medical institution has the power to devise some other matter or thing as a substitute for what the law in positive terms requires.

In this case the printed form of affidavit contained in the book provided by the prothonotary for the registration of doctors of medicine states that the indorsements on the diploma presented are genuine. This goes for nothing, inasmuch as it appears affirmatively that there are no indorsements of any kind upon the copy filed, and in the answer of the respondent and in the depositions taken by him that indorsements were refused to be made, not because of his want of qualifications, but because the institution to which he applied had adopted a rule not to comply with the law by indorsing diplomas.

We have nothing to do with the wisdom of the law, nor have we power to change it in any respect. Administering it as we find it, we are constrained to hold that the registration of the respondent is erroneous, having been made without the production and placing upon the record of the only evidence which the

law requires to authorize the prothonotary to make the entry upon the record.

The printed record provided by the prothonotary is not appropriate to every case that may come up for registry; as entered in this case the record makes the respondent say he has been in continuous practise in St. Louis and Pennsylvania since 1871, when he graduated in 1874. The prothonotary should be careful to see that the printed form is adapted to the circumstances of the particular case; and if not, to erase or make it conform to the facts.

We have reluctantly come to the conclusion that the registration cannot be sustained. While we are satisfied that the respondent intended to comply with the law, we have no doubt with respect to the conclusion which we have reached. The entry, having been made without authority, ought not to stand as a valid registry. It is the duty of the court to see that the records made by their clerks are such as the law permits. Being of the opinion that this is not such record, we must make such order as will annul or set it aside. Rule made absolute.

The respondent appealed, assigning as error the portions of the opinion in brackets and the action of the court in making the rule absolute.

*John C. Yocum* and *John G. Freeze,* for appellant.—Indorsement, as used in the statute, means ratification, sanction, or approval. Ogilvie's Imperial Dictionary, ed. 1882; Roget's Thesaurus.

It could not mean indorsement in the usual meaning of the term. Many states in the Union have similar provisions, and a couple of indorsements would take up all the space of the diploma.

The intent of the legislature is not to be collected from any particular expression, but from a general view of the whole act. 4 Bing. 196; 7 B. & C. 643; Vattel, bk. 2, chap. 17, p. 285; Salkeld v. Johnston, 1 Hare, 210; Dwarr. Stat. pp 193–195, 200, 201.

Section 4 violates art. 4, § 2, of the Constitution of the United States. Corfield v. Coryell, Fed. Cas. No. 3,230, 4 Wash. C. C. 380; Dwarr. Stat. 525.

But if this act were not, as we think it is, unconstitutional as to the 4th section, it is so defective in its provisions and require-

ments that it cannot be enforced; and so it may be rejected and the remainder of the act stand. It makes no provision for the absence of the faculty in the summer vacations; no compensation is allowed or mentioned for the services of the faculty. If there is refusal or neglect to act, there is no pecuniary or other punishment awarded against the medical faculty, college, or university; nor is there any right to the applicant to enforce the performance of the labor in his behalf, or to recover damages for a wilful and causeless refusal. If they decline to inspect his diploma; if they decline to satisfy themselves as to the qualifications of the applicant, and of the genuineness of his diploma; or, having done all these things and being fully satisfied that he is in all respects qualified to practise medicine, refuse to indorse or sufficiently certify that fact, what, under this act, is his redress?

The University of Pennsylvania is not within the jurisdiction of the court of common pleas of Columbia county, and a writ of mandamus from there would not lie. The applicant must locate in Philadelphia, or come to the supreme court for his writ. But even here, would the writ lie? Can it be said that what is required to be done properly "appertains to their office or duty?" Is the act required to be done by the faculty merely ministerial in its character? It seems to us that it does not appertain to the office, and that it is largely judicial and discretionary; and if so, then no redress can be had. State *ex rel.* Powell v. State Medical Examining Board, 32 Minn. 324, 50 Am. Rep. 575, 20 N. W. 238, under the Minnesota statute of 1883; King v. Licensing Justices, 4 Dowl. & R. 735; King v. Sheriffs of York, 3 Barn. & Ad. 770; Howland v. Eldredge, 43 N. Y. 457; *Re* Dorsey, 7 Port. (Ala.) 392; People *ex rel.* Brower v. Wayne County Judge, 1 Mich. 359; Hoole v. Kinkead, 16 Nev. 217; Moses, Mandamus, 84–86; Com. *ex rel.* Griffith v. Cochran, 5 Binn. 87; Com. v. County Comrs. 5 Binn. 536; Schlaudecker v. Marshall, 72 Pa. 200.

*C. R. Buckalew* and *W. H. Rhawn,* for appellee.—If the certificate is an indorsement within the meaning of the 4th section, the registration as made was not legal, for the 2d section of the act requires that the applicant for registration shall present to the prothonotary "his diploma, as well as a true copy of the same, including any indorsements thereon, which copy and in-

dorsements shall be placed on file in the office of the prothonotary."

This certificate is not the certificate of the faculty and signed by their direction, by the dean. It is the nonprofessional opinion of Dr. Tyson that the diploma is not a forgery, and to the professional and moral attainments of the respondent it has no reference; and of these the secretary and the faculty know nothing. The faculty could not delegate to the secretary power to do that which they were required to do themselves. *Re* Turnpike Road, 5 Binn. 481.

It was not intended by article 4, section 11, of the Federal Constitution, to give to the laws of one state any operation in other states. Paul v. Virginia, 8 Wall. 169, 185, 19 L. ed. 357, 361.

This does not discriminate between citizens of this state, citizens of other states, and aliens. It discriminates between medical diplomas only. Such discrimination has no connection with the clause of the Constitution in question. Conner v. Elliott, 18 How. 593, 15 L. ed. 498.

In determining whether an act be constitutional or not, the court cannot look beyond the Constitution itself; the general principles of justice, liberty, and right are not elements of decision. Sharpless v. Philadelphia, 21 Pa. 147, 59 Am. Dec. 759; Erie & N. E. R. v. Casey, 26 Pa. 287; *Ex parte* Spinney, 10 Nev. 335.

The 4th section is an exercise of the police power of the state. Cooley, Const. Lim. 5th ed. 708.

It has been exercised in a great variety of cases, in regulating the right to engage in any particular business or occupation. Garrigues v. Reynolds, 6 Binn. 330; Com. v. King, 1 Whart. 448; Com v. Giltinan, 64 Pa. 100; Com. *ex rel.* Dickinson v. Riddle, 2 Clark (Pa.) 215; Nicholls v. Johnston, 14 Pa. 279; Com. v. Wilson, 9 W. N. C. 291; State v. Gazlay, 5 Ohio, 22; Cousins v. State, 50 Ala. 113, 20 Am. Rep. 290; State v. Hayne, 4 S. C. N. S. 403; Mobile v. Yuille, 3 Ala. 137, 36 Am. Dec. 441; Simmons v. State, 12 Mo. 269, 49 Am. Dec. 131; Great Western R. Co. v. Bacon, 30 Ill. 347, 83 Am. Dec. 199; Wheat v. State, 6 Mo. 455; *Ex parte* Yale, 24 Cal. 241, 86 Am. Dec. 62; Kane v. Johnston, 9 Bosw. 154; Cohen v. Wright, 22 Cal. 322; Antle v. State, 6 Tex. App. 202.

The following statutes of the different states contain provi-

sions similar to the Pennsylvania statute: Massachusetts, Act of 1818; Hewitt v. Charier, 16 Pick. 353; Nev. Stat. 1875, chap. 467; *Ex parte* Spinney, 10 Nev. 335; N. Y. Laws of 1881, chap. 186; South Carolina, Act of 1881; Minnesota Laws of 1883, chap. 125. See also State *ex rel.* Powell v. State Medical Examining Board, 32 Minn. 324.

The faculty may fix the time and place of meeting; and, of course, the power to examine diplomas and indorse the same carries with it the right to require the payment of a reasonable sum in consideration of such indorsement, or the license to register. Cooley, Const. Lim. 5th ed. 244; Dill. Mun. Corp. §§ 291–293, 93–97; State v. Herod, 29 Iowa, 123; Linton v. Sharpsburg Bridge Co. 1 Grant Cas. 414; Cincinnati v. Bryson, 15 Ohio, 625, 45 Am. Dec. 593; Mobile v. Yuille, 3 Ala. 137.

The refusal of the faculty to act is an indictable offense at common law. Gearhart v. Dixon, 1 Pa. St. 224; McKennan v. Bodine, 6 Phila. 582; Wilson v. Com. 10 Serg. & R. 375.

Under the 4th section the faculty acts as the agent of the state in executing a police regulation. The individuals composing the medical faculty are constituted the judges of the facts they are directed to inquire after, and, while the court can issue a mandamus to set them in motion, it will not, by the writ, control the faculty in exercising their judgment whether a diploma is genuine and the holder qualified.

PER CURIAM:
We are not prepared to say that the act of July 8, 1881, is unconstitutional. Inasmuch as there was an entire failure to establish the qualifications required by the 4th section of the act, which could have been determined for a reasonable fee to a medical college or university of this state, we think the plaintiff was improperly registered.

The able opinion of the learned judge justifies his action in striking the registration from the records.

Judgment affirmed.